IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RUTKOSKI FENCING, INC., : No. 3:23cv1451
                Plaintiff :
                                   : (Judge Munley)
      v. :
                                   :
SELECTIVE INSURANCE :
COMPANY OF AMERICA, :
                Defendant :
................................................................................................................

## MEMORANDUM

Before the court for disposition is Defendant Selective Insurance Company of America's motion to dismiss or in the alternative to stay the instant lawsuit filed by Plaintiff Rutkoski Fencing, Inc. The parties have briefed their respective positions, and the matter is ripe for disposition.

**Background**[1]

The facts underlying plaintiff's complaint involve a project for the construction of a data center at the Susquehanna Hyperscale Campus in Berwick, Pennsylvania ("Project"). (Doc. 1, Compl. ¶ 5). The Project owner, Linxon US LLC ("Owner"), contracted with Energy Drilling Services, LLC ("EDS") to serve as the general trades contractor for the Project. (Id. ¶ 6). The contract

---

[1] These brief background facts are derived from plaintiff's complaint and other documents on the record. At this stage of the proceedings, we must accept all factual allegations in the complaint as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

between EDS and the Owner required EDS to furnish a payment bond from a surety company to guarantee payment to EDS's subcontractors in the event that EDS failed to pay. (Id. ¶ 7). To fulfill its obligation to furnish a payment bond, on November 5, 2021, EDS and Defendant Selective Insurance Company of America executed and issued a payment bond in the amount of $700,000.00 ("the Bond"). (Id. ¶ 8, Ex. A).

Subsequently, EDS and Plaintiff Rutkowski Fencing, Inc., entered into a subcontract to provide labor, material, and equipment for the installation of expanded metal fencing on the Project in exchange for payment of $452,080.90 from EDS. (Id. ¶ 9, Ex. B). During the work, EDS and Rutkoski agreed to two change orders increasing the amount of the subcontract to $481,810.90. (Id. ¶ 10).

Rutkowski completed its work to supply and install the specified materials pursuant to the subcontract. (Id. ¶¶ 11, 12). EDS, however, failed to pay and $481,810.90 remains due and owing to Rutkowski per the complaint. (Id. ¶ 16). Because no payment had been received, Rutkoski served a claim on Defendant Selective pursuant to the Bond. (Id. ¶ 17). Ultimately, Defendant Selective did not pay the claim, which led to the instant lawsuit, wherein Plaintiff Rutkowski seeks payment under the Bond.

EDS filed for bankruptcy in the United State Bankruptcy Court, Eastern District of Michigan. (Doc. 8-1, at ECF 5).[2] Defendant Selective then received claims from subcontractors, suppliers and materialmen seeking payment from the Bond because EDS never paid them. (Id.) The claims received by Defendant Selective exceeded the total $700,000.00 sum of the Bond. (Id.)

On July 17, 2023, Defendant Selective filed a petition for interpleader ("Interpleader") in the Court of Common Pleas of Luzerne County, Pennsylvania. (Id.); (Doc. 11-2, "Interpleader Compl.", ECF 5-15). The Interpleader will allow Defendant Selective to deposit the Bond's Penal Sum, that is the total amount of the Bond, with the Luzerne County Court of Common Pleas, and the court will determine how to distribute the disputed funds. (Doc. 8-1, ECF 5). Plaintiff Rutkoski Fencing Inc. is listed as a defendant in the Interpleader. Thus, the Pennsylvania state court will determine the amount plaintiff is entitled to under the Bond.[3]

---

[2] For clarity, the court cites to the ECF page number assigned by the court's filing system found on the upper right hand corner of the page.

[3] The court takes judicial notice of the Interpleader action. See FED. R. EVID. 201(b) (permitting the court, at any time of the proceeding, to take judicial notice of facts that are "not subject to reasonable dispute" in that they are either: (1) "generally known within the territorial jurisdiction of the trial court," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Because the court takes judicial of the Interpleader action, it can be relied upon in determining the instant motion to dismiss or to stay. See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006)("In evaluating a motion to dismiss, [the court] may consider . . . any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders [and] items appearing in the record of the case.' "). The parties do not dispute the existence or nature of the Interpleader.

In response to the instant complaint, Defendant Selective filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or in the alternative to stay this case pending the resolution of the state court Interpleader. The parties have filed briefs in support of their positions, bringing the case to its present posture.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiff is a Pennsylvania corporation with a principal place of business in Swoyersville, Pennsylvania. (Doc. 1, ¶ 1). Defendant is a New Jersey corporation with a principal place of business in Branchville, New Jersey. (Id. ¶ 2). Additionally, the amount in controversy exceeds $75,000. (Id. ¶ 3). Because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over this case. See 28 U.S.C. § 1332 ("A district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states[.]"). As a federal court sitting in diversity, the substantive law of Pennsylvania applies to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Standard of Review**

Defendants filed their motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or

unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

**Discussion**

Defendant makes two arguments. First, Selective argues that this case should be dismissed due to the pendency of the state court Interpleader. Second, and in the alternative, defendant argues that this case should be stayed pending the disposition of the state court Interpleader. The court will address each issue in turn.

**I. Motion To Dismiss**

Defendant argues that this case should be dismissed because where, as here, multiple parties make claims against a payment bond, the proper way to proceed is through an interpleader action. In support of its position, defendant cites to Lewandowski v. Life Ins. Co., 608 A.2d 1087 (Pa. Super. Ct. 1992).

Pennsylvania law provides that "[a]n interpleader is the procedural mechanism through which adverse claimants against the money, property or debt held by another may be required to litigate their claims in one proceeding." Id. at 1088. "Rival claims against an insurer for insurance proceedings is a classic candidate for interpleader. . . . An interpleader's purpose is the avoidance of the expense and inconvenience which results from the defense of multiple

actions arising out of identical claims of entitlement to a 'stake' of money, property or debt." Id. An interpleader action protects a defendant from "the vexation of multiple suits or multiple liability upon the same claim." Id. at 1089 (internal quotation marks and citation omitted).

Thus, it appears that defendant is correct that an interpleader action is the proper mechanism to resolve the various claims against the Bond. Defendant, however, has cited to no cases, and our research has uncovered none, where a separate case filed against a bond stakeholder is dismissed under Rule 12(b)(6) due to the existence of an interpleader action. The court finds that the more appropriate way to analyze the case is to determine whether the court should abstain/stay the proceedings based upon the state court Interpleader. This is the second argument raised by defendant's motion.

## II. Motion To Stay

Defendant next argues that the court should stay this action pending the state court's ruling on the Interpleader. "It is axiomatic that federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them' by Congress." Ryan v. Johnson, 115 F.3d 193, 195 (3d Cir. 1997) (citing Colorado River Water Dist. v. United States, 424 U.S. 800, 817 (1976)). Defendant argues that the "Colorado River Doctrine" applies here, and staying the instant case is appropriate. The Colorado River doctrine is a narrow exception to the court's

obligation to exercise its jurisdiction that applies solely under "exceptional circumstances." Colorado River, 424 U.S. at 813. The doctrine allows "a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding." Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 307 (3d Cir. 2009).

In Colorado River, the Supreme Court announced that a district court may abstain from exercising its jurisdiction where the parties before the district court are engaged also in a parallel state court proceeding. The Supreme Court supplied the following enumerated factors to examine to determine whether abstention is appropriate: "(1) whether the state court assumed *in rem* jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums." Ryan, 115 F.3d at 196 (citing Colorado River, 424 U.S. at 818). Subsequently, two additional factors have emerged, whether federal or state law controls and whether the state court will adequately protect the interests of the parties. Hamilton Inc, 571 F.3d at 308.

The Colorado River doctrine is an exception to "[t]he general rule regarding simultaneous litigation of similar issues in both state and federal courts ... that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other

action." Spring City Corp. v. American Buildings Co., 193 F.3d 165, 172 (3d Cir. 1999) (citing University of Maryland v. Peat Marwick Main & Co., 923 F.2d 265, 275-76 (3d Cir. 1991). The analysis of Colorado River abstention proceeds in two phases. First, the court must determine whether parallel state and federal cases exist. Then the court applies the factors set forth above.

A proceeding is parallel if it involves the same parties and "substantially identical" claims, raising "nearly identical allegations and issues." Trent v. Dial Med. of Fla., Inc., 33 F.3d 217, 223 (3d Cir. 1994) (overruled in part on other grounds). "Cases are not parallel under Colorado River abstention where the federal court case involves claims that are distinct from those at issue in a state court case like where parties in the two cases employ substantially different approaches which might achieve potentially different results." Kelly v. Maxum Specialty Ins. Grp., 868 F.3d 274, 285 (3d Cir. 2017) (internal citation, editing marks, and quotation marks omitted).

Here, the issue is how much plaintiff is owed under the Bond. The same issue is before the state court in the Interpleader. The issues, therefore, appear to be nearly identical. Plaintiff argues that it seeks attorney's fees in the federal action and not in the state court case, thus the issues are not identical. The issue of attorney's fees, however, is ancillary to the main issue of how much

plaintiff is owed under the Bond. Accordingly, the issues are substantially the same in the two cases.

The parties in this case are also involved in the state court case in that the plaintiff in this case is a defendant in the state court case and the defendant in this case is the plaintiff in the state court case.[4] With substantially similar issues and parties, the court concludes, that the two actions are parallel and will proceed to an analysis of the abstention factors.

### A. Did the State Assume *in rem* Jurisdiction?

The first factor to review is whether the state court assumed *in rem* jurisdiction over the subject property. Ryan, 115 F.3d at 196. The parties agree that this factor is inapplicable because this case is not an *in rem* action. (Doc. 11, at ECF 18; Doc. 12, at ECF 7). Thus, this factor does not affect the court's analysis.

### B. The Inconvenience of the Federal Forum

The second Colorado River Doctrine factor is the inconvenience of the federal forum. Ryan, 115 F.3d at 196. Physically, the federal forum is not more inconvenient than the state forum because the Luzerne County Courthouse is not

---

[4] The state court case does involve several more parties, other entities seeking payment under the Bond. However, "the presence of additional parties in the state action does not destroy the parallel nature of the cases when all of the parties in the federal action are also parties in the state action." Lincoln Square 1766 Assocs., LLC v. Great Am. Ins. Co., Civ. No. 20-4003; 2020 WL 6262188 at *3 (E.D. Pa. Oct. 23, 2020) (internal quotation marks, editing marks, and citation omitted).

far from the United States Courthouse for the Scranton Division of the Middle District of Pennsylvania. Accordingly, this factor is neutral in the court's analysis.

### C. Piecemeal Litigation

The third abstention factor to consider is the desirability of avoiding piecemeal litigation. Id. This factor favors abstention only where "there is evidence of a strong federal policy that all claims should be tried in state courts." Ryan, 115 F.3d at 197-98. "[T]he mere possibility of piecemeal litigation" fails to meet this test. Id. at 198. Here, defendant points to no strong federal policy that the instant bond issue should be tried in state courts. Accordingly, this factor does not favor abstention.

### D. What was the order in which jurisdiction was obtained?

The fourth factor is the order in which jurisdiction was obtained by the concurrent forums. Ryan, 115 F.3d at 196. "This factor, as with the other Colorado River factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone Mem. Hosp. v. Mercy Constr. Corp., 460 U.S. 1, 21 (1983).

The record reflects that defendant filed a petition for interpleader with the Luzerne County Court of Common Pleas on July 17, 2023. (Doc. 11-2 at ECF 5).

11

Approximately a month and a half later, plaintiff filed the instant complaint on August 31, 2023. (Doc. 1). Plaintiff evidently filed preliminary objections to the state court petition on October 2, 2023. (Doc. 11-2, ECF 27-37). On October 19, 2023, Defendant Selective filed, what it deemed to be an "Amended Complaint" in state court. (Doc. 11 at ECF 21). Plaintiff argues that the state court case commenced at the earliest when this "Amended Complaint" was filed. Whether the case officially commenced with the filing of the petition or the "Amended Complaint", the state court was dealing with the Interpleader in some form or another a month and a half before the filing of the instant case.

Regardless, as noted by the Supreme Court in Moses, *supra*, the court must go beyond which case was filed first and examine the progress made in each case. On October 20, 2023, the defendant filed the instant motion. (Doc. 8). Since that time no substantive action has occurred in the federal case.

According to a status report filed by the defendant with the consent of plaintiff's counsel, proceedings have occurred in the state court case. (Doc. 14). On April 2, 2024, the Court of Common Pleas entered a Consent Order which withdrew Plaintiff Rutkoski's preliminary objections to the state court action. (Id.) The state court held a status conference on May 1, 2024, where the parties discussed the manner in which Rutkoski would file responsive pleadings to the Interpleader. (Id.) On May 2, 2024, Rutkoski filed an Answer, New Matter,

Counter Claim, and Cross- Claim in the state court case. (Id.) The Counterclaim seeks relief under the same bond at issue in the instant case. (Id.) The state court scheduled a status conference for July 1, 2024. (Id.) The record does not reveal the result of this conference. Accordingly, it appears that more proceedings have occurred in the state court. This factor therefore weighs in favor of abstention and staying this case.

### E. Does state law or federal law control?

The next factor to review is whether state law or federal law controls. Hamilton Inc., 571 F.3d at 308. Here, as noted above, the court sits in diversity jurisdiction, therefore, state substantive law applies. The parties do not ask the court to enforce federal law. Thus, this factor weighs in favor of staying the case.

### F. Will the state court adequately protect the interests of the parties?

The final factor is whether the state court will adequately protect the interests of the parties. Id. Here, there is no indication that the state court will not adequately protect the interests of the parties. As noted under the previous factor, substantive federal law is not involved in this case. The Pennsylvania court will be applying Pennsylvania law. Accordingly, this factor weighs in favor of staying this case under the Colorado River Doctrine.

Based upon the above analysis, the factors which are not neutral or inapplicable weigh in favor of staying this case until the state court proceedings

have been completed. Therefore, on balance, the relevant factors weigh in favor of abstention.

## Conclusion

The court will deny the defendant's motion to dismiss this action, but will grant the motion to stay this case until the state court proceedings have been completed. An appropriate order follows.

Date: 3/10/25

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court